LIBERTY MANUFACTURING COMPANY, A CORPORATION, v. JAMES D. MALLOY AND ARMOUR & COMPANY, A CORPORATION.

(Filed 8 June, 1940.)

**1. Chattel Mortgages § 9a: Mortgages § 12—**

Proper registration of a lien upon real or personal property is notice to all the world of the existence of the lien created by the instrument, but due cancellation of record may be relied upon with equal security.

**2. Mortgages § 27: Chattel Mortgages §§ 2, 14—**

A lien is incident to the debt secured and the discharge of the debt discharges the lien itself, and therefore when it appears upon the face of a chattel mortgage that it was given as additional security to a deed of trust, cancellation of record of the deed of trust discharges the chattel mortgage, even though the chattel mortgage is not canceled of record.

**3. Same—After discharge of lien it may not be held as security for another debt as against purchaser from encumbrancer.**

Upon the maturity of one of the notes secured by a deed of trust on lands, the trustor executed a note secured by a chattel mortgage and delivered same to the *cestui* as additional security to the deed of trust, which chattel mortgage provided on its face that it was additional security to the mortgage debt. Plaintiff *cestui* contended that it was executed as additional security, also, to a crop lien theretofore executed by trustor. Thereafter the crop lien and the deed of trust were canceled of record upon the conveyance of the realty to the *cestui.* The *cestui* also contended that two mules covered by the deed of trust were released to the trustor under agreement that the chattel mortgage should remain in effect.

*Held:* The cancellation of the deed of trust and the crop lien discharged the chattel mortgage, and as against the purchaser of the chattels from the trustor, *cestui* may not assert that the release of the mules continued the lien of the chattel mortgage, since after the discharge of the lien it may not be asserted against a purchaser for any separate or collateral debt or agreement.

APPEAL by defendant Armour & Company from *Harris, J.,* at October Term, 1939, of ROBESON. New trial.

Civil action to recover the value of property sold by individual defendant to corporate defendant and upon which plaintiff claims a lien.

On 31 October, 1938, the defendant Malloy was indebted to the plaintiff as evidenced by two notes in the aggregate sum of $1,657.27, which notes were secured by a real estate mortgage. The first note in the sum of $857.27 matured 1 October, 1938. On 31 October, 1938, defendant Malloy executed to the plaintiff a note in the sum of $800 and at the same time executed and delivered a chattel mortgage to secure the same conveying "52 hogs averaging about 3 months old each, and weighing approximately 60 pounds each, being all the hogs of this age and weight that I now own," subject to the agreement that from this number of hogs grantor excepted two as brood sows to be selected by him. This chattel mortgage contained the provision that: "This chattel is given as additional security to a certain deed of trust on the lands of grantor in favor of Liberty Manufacturing Company, which deed of trust matured in part on 1 October, 1938." At the same time Malloy was indebted to the plaintiff on a crop lien mortgage in the sum of $577.93.

Subsequent to the execution of the chattel mortgage Malloy conveyed to the plaintiff the lands described in the deed of trust in satisfaction of the indebtedness thereby secured and said deed of trust was duly canceled of record. The crop lien mortgage was marked paid 23 November, 1938, and was duly canceled of record.

In February and March, 1939, after the execution of the chattel mortgage, Malloy sold to the defendant Armour & Company 38 hogs for the sum of $393.10. Of this amount $11.24 was paid to plaintiff by Armour & Company on order of Malloy. Plaintiff sues for the balance, claiming same under the terms of the chattel mortgage.

Issues were submitted to and answered by the jury under the instructions of the court that if they believed all of the evidence they would answer the same in favor of the plaintiff as indicated by the answers as follows:

"1. Did the defendant James D. Malloy execute the note to the plaintiff bearing date October 31, 1938, for value, as alleged in the complaint? Answer: 'Yes.'

"2. What amount, if any, is the defendant James D. Malloy indebted

to the plaintiff on said note? Answer: '$800.00, with interest from October 31, 1938, subject to a credit of $11.24 as of May 5, 1939.'

"3. Did the defendant James D. Malloy execute the chattel mortgage, as alleged in the complaint? Answer: 'Yes.'

"4. Did the defendant Armour & Company purchase from James D. Malloy the hogs described in the chattel mortgage, as described in the complaint? Answer: 'Yes.'

"5. What amount, if any, is the defendant Armour & Company indebted to the plaintiff on account of the matters alleged in the complaint? Answer: '$393.10, together with interest from February 9, 1939, subject to a credit of $11.24 as of May 5, 1939.'

"6. Did the plaintiff Liberty Manufacturing Company hold a valid recorded lien against the hogs described in the chattel mortgage when purchased by Armour & Company? Answer: 'Yes.' "

From judgment thereon defendant Armour & Company appealed.

*Downing & Downing and Myers & Snerly for defendant Armour & Company, appellant.*
*Johnson & Timberlake for plaintiff, appellee.*

BARNHILL, J. There was no present consideration for the execution of the chattel mortgage and note secured thereby. It was executed and delivered as additional security to the notes secured by the trust deed as is indicated upon its face. Witness for plaintiff so testified: "When he gave the chattel mortgage he owed the money. He already had the consideration for the chattel mortgage. We asked for additional security on what he already had. He gave the additional security because we asked for it. There was no additional consideration. We did not give him anything additional for it. When Mr. Malloy executed the chattel mortgage referred to there was no additional credit given him."

When an instrument creating a lien upon real or personal property is recorded as required by law it is for the purpose, in part at least, of giving notice of the lien to all persons who may thereafter acquire an interest in the property thus conveyed. It is equally true that when such instrument thus recorded is duly canceled of record it gives notice that the lien thereby created no longer exists. All persons are charged with notice of the lien created by the registered instrument. They may rely with equal security upon the cancellation.

The debt secured is the life of the mortgage and gives it vigor and efficacy. The essential effect and consequence of the discharge of the mortgage debt is the discharge of the mortgage itself. The mortgage was incident to the debt, rested upon it, and when the purpose for which it was created was accomplished, it ceased to have effect. *Walker v. Mebane,* 90 N. C., 259; *Elliott v. Wyatt,* 74 N. C., 55. While the

chattel mortgage is not canceled of record the debt secured by the deed of trust and for which the chattel mortgage was given as additional security has been paid and the trust deed has been duly canceled. When the principal debt is discharged the security is discharged. Cancellation of the trust deed was notice to the public that the lien created by the chattel mortgage no longer existed for the reason that the debt for which it was given as security had been fully discharged.

But the plaintiff contends and offered evidence tending to show that at the time the chattel mortgage was executed it was understood and agreed that it should also be held as additional security for the crop lien, which, incidentally, has been duly marked paid and canceled of record. As to this, what has been said is apropos, even if it be conceded that the verbal agreement had any legal effect.

But the plaintiff contends further that at the time the real estate notes were satisfied by the conveyance of the land described in the trust deed, at the request of Malloy, plaintiff agreed to release two mules which were included in the deed of trust upon condition that Malloy would permit plaintiff to retain the chattel mortgage. The purpose for which the chattel mortgage was to be retained is not clear. The land debt was paid by the conveyance of the land and if the chattel mortgage was to be retained as security for the value of the two mules released, the amount to be so secured does not appear. Even so, this is not material.

"There is no principle which permits a mortgagor who has paid his mortgage and taken a satisfaction, there being at the time no equitable reason for keeping it afoot, subsequently to resuscitate and reissue it as security for a new loan or transaction, especially where the rights of third parties are in question, and it would make no difference whether the reissue of the mortgage was before or after the new rights and interests had intervened . . . the contention that a person having at the time notice that a mortgage had been paid by the mortgagor in usual course, can, by a verbal arrangement between himself and the mortgagor, give the extinct mortgage vitality again as security for a new loan, so as to give it priority over a subsequent conveyance or mortgage is not justified by the authorities." *Saleeby v. Brown,* 190 N. C., 138, 129 S. E., 424; *Bogert v. Striker,* 42 N. E. (N. Y.), 528; *Flye v. Berry,* 63 N. E. (Mass.), 1071; *Hibernia Nat'n. Bank v. Succession of Gragard,* 30 So. (La.), 728; 19 R. C. L., 445, sec. 229.

In *Blake v. Broughton,* 107 N. C., 220, there was evidence that the mortgagor, after the execution of the mortgage and notes secured thereby, procured the assignment of the notes to a third party to secure money then advanced. There was likewise evidence that the original debt, evidenced by the notes and mortgage, had been satisfied. The Court held that if the mortgage debt had been discharged the mortgage was no

longer operative, although the notes were not marked satisfied. It was there said: "After their (notes) satisfaction, though not so marked on the record, they certainly could not be held as a security for money loaned or advanced to the prejudice of a purchaser for value from the mortgagor or his assigns. Having been paid off and discharged, the want of cancellation could not have the effect to revive them and give them new life and vitality to defeat such a purchaser." *Walker v. Mebane, supra; Ballard v. Williams*, 95 N. C., 126.

It follows that on this record the corporate defendant acquired a good title to the personal property purchased from Malloy and that the charge of the court was erroneous. As there was no motion for judgment as of nonsuit the only course left for us to pursue is to direct a new trial.

The defendant Malloy gave notice of appeal and joined in the settlement of the case on appeal. However, as he filed no brief, his appeal is deemed to be abandoned.

New trial.